CITY OF ARDMORE *et al.* v. STATE' *ex rel.* BEST.

No. 950.   Opinion Filed November 2, 1909.

(104 Pac. 913.)

1.  **QUESTION NOT DETERMINED.** Whether section 18 of the act of the Legislature entitled "An act providing for carrying into effect the initiative and referendum powers reserved by the people in articles 5 and 18 of the Constitution of the state of Oklahoma, regulating elections thereunder, and to punish violations of this act" (Sess. Laws, 1907-1908, p. 440, c. 44), fixing the time resolutions and ordinances of a municipal Legislature shall become effective. applies to an ordinance providing for an election to determine whether certain public utility bonds shall be issued is not determined. and is specifically reserved for the future consideration of the court.

2.    **MUNICIPAL CORPORATIONS—Bond Election—Publication of Notice—Harmless Irregularities.** In ordering an election in a city of the first class, on a question of whether certain public utility bonds shall be issued, 10 days' notice of such election, by publication of the mayor's proclamation calling the election in a newspaper of general circulation in such city at least 10 days prior to the date of the election, is required (section 1, art. 4, of an act entitled "An act regulating elections in cities and towns * * *" [Sess. Laws 1909, p. 268, c. 16]); but, if the notice be published for a less time than 10 days prior to the election, a court of equity will not, for this reason alone, declare the election void, where it is not shown or alleged that any one .failed to vote because of the failure to publish the proclamation for the full statutory period, and where it is conceded that the general voting public had notice of the election and .participated therein.

3.    **MUNICIPAL CORPORATIONS—Bond Election—Time of Opening and Closing Polls.** Under section 1, art. 4, of the act entitled "An act. regulating elections in cities and towns * * *" (Sess. Laws 1909, p. 268. c. 16). the time of opening the polls at elections in cities of the first class, for the determination of whether certain public utility bonds shall be issued, shall be set forth in the mayor's proclamation calling and giving notice of the election, and the statute fixing the times of opening and closing the polls at general elections does not apply.

4.    **MUNICIPAL CORPORATIONS — Indebtedness — Constitutional Limitations.** Section 27, art. 10, of the Constitution authorizes any city or town, by a majority vote of the qualified property, taxpaying voters of such city or town, voting at an election held for that purpose, to become indebted in a larger amount than that specified in section 26, for the purpose of purchasing or constructing public utilities, or for repairing the same, to be owned exclusively by the city.

5.    **MUNICIPAL CORPORATIONS — Indebtedness — Constitutional Limitations—"Public Utility."** A public park is a "public utility" within the meaning of that term as used in section 27, art. 10, of the Constitution, and bonds for the improvement of such parks are by said section authorized to be issued by incorporated cities and towns in the manner therein provided for.

(Syllabus by the Court.)

*Error from District Court, Carter County: Stilwell H. Russell, Judge.*

Mandamus by the State, on relation of I. R. Best, against the City of Ardmore and others. Judgment for relator, and respondents bring error. Affirmed.

The proceeding is from a judgment in the district court of Carter county awarding a peremptory writ of mandamus, ordering and directing plaintiffs in error, defendants below, to issue certain public utility bonds. On the 15th day of February, 1909, the city council of Ardmore, a city of the first class, passed an ordinance ordering and calling a special election to be held in that city on the 23d day of March, 1909, for the purpose of submitting to the qualified taxpaying voters of that city whether bonds for the following amounts and for the following purposes should be issued: $75,000 for the construction and improvements of waterworks; $80,000 for the construction of sewers; $10,000 for the improvement of public parks; $35,000 for the improvement of streets; and $20,000 for the improvement of the fire department. On the 20th day of February, 1909, the mayor issued his proclamation calling the election to be held on the date fixed by the ordinance, and it was published on the succeeding day in a newspaper of general circulation in the city. At the election a majority of the votes cast was in favor of all the propositions submitted. After the returns of the election had been declared, the board of commissioners of the city of Ardmore, which, under the present charter of that city, constitutes its legislative board, passed an ordinance providing and directing the issuance of the bonds, and providing for the levy and collection annually of a tax of sufficient amount to pay the interest on said bonds and to create a sinking fund to pay the principal thereof at maturity. But the plaintiffs in error, James A. Cotner, as mayor, and G. H. Bruce, as city clerk, of the city of Ardmore, refused to issue the bonds. The propositions of law which this proceeding presents may best be considered by stating the grounds upon which plaintiffs in error refused to act in accordance with the provisions of said ordinance, which are as follows: First, that the ordinance authorizing the calling of the special election did not become effective until 30 days after the passage of the same, and that by reason thereof the mayor, at the time he first issued and published the proclamation calling the election, was without authority to do so; second, that the polls at the election were opened at 8 o'clock, instead of

6 o'clock, in the forenoon, and closed at 6 o'clock in the afternoon, instead of 7 o'clock; third, that to issue the bonds would increase the indebtedness of the city of Ardmore to an amount in excess of the limit prescribed by the Constitution; fourth, that the purposes for which the bonds were voted and were to be issued were not public utilities, and that the bonds are therefore unauthorized.

*J. B. Moore,* for plaintiffs in error.—Citing: *Wilkinson v. Leland,* 2 Pet. (U. S.) 662; *Smith v. Stronger* (Cal.) 8 Pac. 852; *Nat. Bank of Commerce v. Town of Granada,* 54 Fed. 103; *People v. Seale,* 52 Cal. 71; *State ex rel. v. Wollem,* 37 Iowa, 131.

*W. A. Ledbetter* and *J. B. Perkins,* for defendant in error, —Citing: 15 Cyc. 321, 322; *Board of Trustees v. Railway Co.* (Ky.) 30 S. W. 1; *City of LaFayette v. State,* 69 Ind. 228; Black on Interpretation of Laws, sec. 129; *Gilliland v. Schuyler,* 9 Kan. 387; *State ex rel. v. Millar,* 21 Okla. 448; *State ex rel. v. Barnes,* 22 Okla. 191; *Barnes v. Hill,* 23 Okla. 207.

HAYES, J.   (after stating the facts as above.)   By section 1, art. 5, of the Constitution the power is reserved to the people of the state to propose laws and to enact or reject the same at the polls independent of the Legislature, and also to approve or reject at the polls any act of the Legislature.   These powers, designated as the initiative and referendum, are, by section 5 of the same article, reserved to the legal voters of every county and district of the state as to all local legislation or action in the administration of county or district government.   Section 4(a), art. 18, reserves these same powers to the people of every municipal corporation.   This latter section was held, in *Ex parte Wagner,* 21 Okla. 33, 95 Pac. 435, not to be self-executing.   The First Legislature passed an act entitled "An act to provide for carrying into effect the initiative and referendum powers reserved by the people in articles 5 and 18 of the Constitution of the state of Oklahoma, to regulate elections thereunder, and to punish violations of this act."   Sess. Laws, 1907-1908, p. 440, c. 44.   This act undertakes to provide a procedure by which the people of the state and of municipal corporations may avail themselves of the

Vol. 24—55

right to exercise the powers of the initiative and referendum. Section 18 of this act, after providing the manner of verifying referendum petitions against any orders or resolutions of any municipal legislative body, and providing the time in which the same shall be filed, contains the following provision:

"No ordinance or resolution of a municipal Legislature shall become operative until thirty days after its passage, and approval by the executive officer, unless the same shall be passed over his veto and in that case it shall not take effect and become operative until thirty days after such final passage except such measures necessary for the immediate preservation of peace, health, or safety; and no such emergency measure shall become immediately operative, unless it shall state, in a separate section, the reasons why it is necessary that it shall become immediately operative, and the question of emergency shall be ruled upon separately and be approved by the affirmative vote of three-fourths of all the members elected to the city council taken by ayes and noes, and the whole measure be approved by the executive officer."

The ordinance involved in this case does not contain the emergency clause, and plaintiff in error insists that it did not, under the provisions of said section 18 quoted above, became effective until 30 days after its passage. Defendants in error, on the other hand, contend that the referendum cannot be invoked against ordinances of the character of this ordinance, and that this ordinance for that reason was unaffected by said section, and became effective immediately upon its passage and approval. Under the view we take of the law applicable to the facts as they exist in this case it is unnecessary for us to decide whether the language of said section 18 quoted above applies to ordinances of the character involved in this case; for, if we assume, without deciding that it does apply to this ordinance, still we think that the election in this case was a valid election. Because of the importance of a correct decision of this question to the different municipalities of the state, and to those who have already purchased their securities, we reserve a final determination of this question until a decision of the same is necessary to a determination of the case presented.

The proclamation of the mayor of Ardmore calling the elec-

tion to vote upon the issuance of bonds was first published on February 21, 1909. Assuming, without deciding, that this first publication was premature and unauthorized because the ordinance in question had not then become effective, still we think that sufficient publication was made after the expiration of 30 days after the passage of the ordinance as to render the election valid. The statute in force at the time of the adoption of the ordinance (section 354, Wilson's Rev. & Ann. St. 1903), as well as the statute in force at the expiration of 30 days after the passage of the ordinance (section 1, art. 4, c. 16, p. 268, Sess. Laws, 1909), required the mayor of any city of the first class to give notice of such election, for the purpose of submitting the question of the issuance of bonds to the voters of any city by publication of his proclamation, for at least 10 days prior to the date of such election. The mayor of Ardmore published his proclamation every day after the expiration of 30 days from the passage of the ordinance until the date of the election. If the ordinance did not become effective until 30 days after its passage, it became effective on the 16th day of March, and the election was held on the 23d day of March. It was therefore impossible for the mayor to give the full statutory period of notice of 10 days within such period, but he did publish his proclamation each day during that period. It is conceded that the legal voters of the city had notice of the election and participated therein. It is not contended that the failure to give notice of the election for the full period of 10 days required by the statute resulted in a sufficient number of voters failing to vote to change the result of the election, or that any voters whatever failed to vote because of lack of knowledge or notice of the election.

This court, in the case of *Town of Grove v. C. N. Haskell et al., ante,* p. 707, 104 Pac. 56, wherein a question very similar to the one now under consideration was involved, said:

"Counsel for plaintiffs in their petition in no manner aver or charge that any voter failed to attend and vote at the election held by reason of want of notice or knowledge, or that the failure to post the notices in exact conformity with the requirements of

the proclamation had any effect whatever upon the result of the election. In the absence of such a showing and averment it is our judgment the correct rule in such cases is that, although the notices may be posted for a time less than that specified, the court will not, for this reason alone, declare the election void, at the suit of a party who participated therein, where it is not also shown that the electors of the county did not participate therein by reason of lack of notice or knowledge, and that a different result would have obtained if the full statutory notice had been given."

*Ellis v. Karl, et al.,* 7 Neb. 381, is a case in point. The statute under consideration in that case was one providing for an election to determine the relocation of a county seat. The statute required 30 days' notice of such election. The board of county commissioners received the petitions for such election upon the 20th day of August, 1877, and immediately entered their order for the election to be held on the 4th day of September, 1877. The election was held on said date without the full 30 days' notice required by the statute having been given, and under the order of the commissioners fixing the date of the election it was impossible to give such notice. The court held that the election was not invalid for want of such notice, where it was not shown that any one failed to take part in the election on account of the failure to publish the notice for full 30 days as required by the statute.

A similar rule was laid down by the Supreme Court of Iowa, in *Dishon v. Smith,* 10 Iowa, 212, in the following language:

"Upon considerations like these the courts have held that the voice of the people is not to be rejected for a defect, or even a want of notice, if they have, in truth been called upon and have spoken. In the present case, whether there were notices or not, there was an election, and the people of the county voted, and it is not alleged that any portion of them failed in knowledge of the pendency of the question, or to exercise their franchise."

See, also, *Wheat v. Smith,* 50 Ark. 267, 7 S. W. 161; *State v. Doherty,* 16 Wash. 383, 47 Pac. 958, 58 Am. St. Rep. 39.

Mr. McCrary on Elections, par. 179 (4th Ed.), says:

"It is doubtless perfectly true that where the election has been held at the proper time and the proper place, and the electors have had notice and participated in it, the want of such notice as the

law provides will not render it void. But if it appears that due notice has not been given, and that a portion of the electors have been thereby deprived of their right to vote, and particularly if the number thus deprived is sufficient to have changed the result if they had voted on one side or the other, in such a case the election is clearly void."

The failure to publish the notice for the length of time required by the statute not having resulted in prejudice to the voters, and the general voting public having had knowledge and notice of the election, and having participated therein, failure to give notice thereof for the full number of days provided by the statute does not invalidate the election.

The polls were not opened until 8 o'clock in the forenoon. The general election statute requires that the polls, at any election in cities of the first class for the election of state and county officers, shall be opened at 6 o'clock in the forenoon, and kept open until 7 o'clock in the afternoon (section 1, art. 6, c. 31, p. 343, Sess. Laws 1907-1908), and at elections in cities of the first class of municipal officers the polls must open at 8 o'clock in the forenoon and close at 7 o'clock in the afternoon (section 2, art. 1, c. 16, p. 264, Sess. Laws 1909). But section 1, art. 4, of the act of the Legislature approved March 13, 1909 (Sess. Laws 1909, p. 268, c. 16), provides that the mayor of a city of the first class, in calling elections to determine whether bonds shall be issued, shall set forth in the proclamation published by him the time of opening and closing the polls, the number and location of the polling places, the names of the officers who shall conduct the election, and said section specifies what election officers shall be appointed. This section of the statute which was in force at the time the election in the case at bar was held contemplates that the mayor shall, in the proclamation published by him, give notice of the election and fix the time of opening and closing the polls, and the number and location of the polling places. The proclamation published by the mayor after the ordinance became effective fixed the hour of opening the polls at 8 o'clock in the forenoon and the hour of closing them at 6 o'clock in the afternoon. The polls were opened and closed at those hours.

Section 26, art. 10, of the Constitution prohibits any county, city, town, township, or school district of the state from becoming indebted in any manner for any purpose to any amount exceeding in any year the income and revenue provided for such year, without the assent of three-fifths of the voters that vote at an election held for that purpose, and in cases requiring such assent such subdivisions of the state are prohibited from incurring such indebtedness to an amount, including existing indebtedness, in the aggregate exceeding 5 per cent. of the valuation of the taxable property of such subdivision to be ascertained from the last assessment for state and county purposes previous to the incurring of such indebtedness. The value of all taxable property in the city of Ardmore, as shown by the last annual assessment for state and county purposes previous to the election, was $6,282,957, and the floating indebtedness of the city is $331,000. To issue the bonds in question would increase the indebtedness of the city so as to make it exceed 5 per cent. of the value of the taxable property. But section 27 of the same article of the Constitution provides that any incorporated city or town of the state may, by assent of a majority of the qualified property taxpaying voters of such city or town, voting at an election held for that purpose be allowed to become indebted in a larger amount than that specified in section 26 for the purpose of purchasing or constructing public utilities, or for repairing the same, to be owned exclusively by the city. This section forms an exception to the general prohibition contained in section 26, and such of the bonds involved in this case as are for the construction or purchase or repair of public utilities fall within the provision of section 27, and are valid, although by issuing them the indebtedness of the city is increased to an amount in excess of 5 per cent. of the value of its taxable property. *State v. Millar,* 21 Okla. 448, 96 Pac. 747. Fifteen thousand dollars of the bonds under consideration, and authorized by the election to be issued, are to provide means to be used in the improvement of public parks owned exclusively by the city of Ardmore. Plaintiffs in error contend that public parks are not public utilities. In *Barnes et al. v. Hill,* 23 Okla. 207, 99 Pac. 927, it is held that a

public park is a public utility within the meaning of that term as used in section 27, art. 10, of the Constitution, and that bonds issued for the purpose of constructing improvements therein, such as walks and driveways, are authorized by this section of the Constitution. Under the doctrine of that case the contention of plaintiffs in error cannot be sustained.

No contention is made by counsel for plaintiffs in error in his brief that any of the other bonds authorized to be issued are not such bonds as come within the terms of said section 27, art. 10, of the Constitution. There being no objection to their validity, we take it that their validity is conceded, and a discussion thereof is unnecessary.

The judgment of the trial court is affirmed.

All the Justices concur.