**PITTS, County Treas., v. ALLEN.**

No. 18360. Opinion Filed April 24, 1928.

Rehearing Denied Oct. 15, 1929.

S. H. Lattimore, Co. Atty., C. A. Ambrister, and Bower Broaddus, for plaintiff in error.

Joseph C. Stone, Charles A. Moon, and Francis Stewart, for defendant in error.

HARRISON, J. This defendant in error, J. N. Allen, was plaintiff below, having brought this action to recover certain taxes which he had paid under protest to the county treasurer of Muskogee county, and which he claimed to be illegal and void.

He alleged that four different levies for the year 1925 were illegal and void and set out and numbered each of such levies as a separate cause of action, making four distinct causes of action.

The first cause of action was that the levy of a one-mill tax made under the purported authority of chapter 13, Session Laws 1925, was invalid for the reason that the portion of said act purporting to authorize such a levy was not indicated nor expressed in the title of said act, as required by sec. 57, art. 5, of the Constitution, which requires that,

"Every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title."

Also plaintiff alleged said levy to be void for the further reason that it had not been authorized by a vote of the people as required by law.

In his second cause of action, he alleged that .8836 mills of the levy made for the benefit of the city of Muskogee's general fund was excessive and unnecessary, and therefore illegal and void for the reason that the balance sheet statement, as made and approved, erroneously understates the balance of uncollected taxes; that by reason thereof said balance sheets reflect a deficit, whereas, in truth, it should reflect a surplus, which would have been sufficient without making the excess .8836-mill levy.

The third cause of action alleged that a one-mill levy made for the benefit of the city of Muskogee general fund was excessive, illegal and void, for the reason that said levy was made for a street repair and maintenance fund for said city, when in truth there existed cash on hand, which, if it had been considered with other incomes from other sources, would have been sufficient to take care of the city street and maintenance fund without making any levy.

For his fourth cause of action, plaintiff alleged that the entire levy amounting to 8.96 mills, made for the purpose of paying the annual interest on and creating a sinking fund for the entire outstanding bonded indebtedness of the city of Muskogee, was illegal and void. First, for the reason that 3.36 mills of such levy was made for the purpose of paying the annual interest on and creating a sinking fund for certain utility bonds issued by the city of Muskogee for a waterworks system, owned and operated by said city; that said city had a surplus on hand, derived from water rates charged, sufficient, after paying all operating expenses of the waterworks plant, to pay the interest on and create a sinking fund for the waterworks bonds, and that it was the duty of such city to use such surplus in payment of such interest and sinking fund, and that, such being true, neither the city nor county excise board had authority to make

298

a tax levy for such purpose, and that said 3.36 mills levy was therefore void. Second, that the remainder of the aforesaid 8.96 mills levy was void for the reason that said city had, or should have had, a surplus balance on hand, derived from excessive tax levies made during previous years for such purposes, to take care of all other outstanding bonded indebtedness, except the aforesaid waterworks bonds, and that, therefore, the entire levy made for bonded indebtedness was illegal and void.

The trial court gave judgment in favor of plaintiff below, on his first cause of action, for the one-mill levy made under the purported authority of chapter 13, Sess. Laws 1925.

On the second cause of action, the court gave judgment in favor of defendant below, county treasurer, for the .8836 mills levied for the benefit of the city of Muskogee's general fund.

On the third cause of action, the court gave judgment in favor of plaintiff below, for the additional one-mill levy made for street improvement purposes, the court holding said one-mill levy to be void.

On the fourth cause of action, the court gave judgment in favor of plaintiff below, to the extent of 3.36 mills levied for sinking fund and interest purposes for waterworks bonds, but gave judgment in favor of defendant below for the balance of 8.96 mills alleged to have been illegally levied for interest and sinking fund for outstanding bonded indebtedness of the city other than its waterworks bonds.

From the judgment in favor of plaintiff below on the first and third causes of action, and from the judgment in favor of plaintiff below on his fourth cause of action, for recovery of the said 3.36 mills levied for interest and sinking fund for waterworks bonds, the defendant below, county treasurer, has appealed and filed his petition in error, and from the judgment rendered in favor of defendant below, county treasurer, on the second cause of action, and the portion of the judgment in favor of the defendant below on the fourth cause of action, plaintiff below has appealed and filed his cross-petition in error.

The case was orally argued here by both parties and both parties have filed extensive briefs.

The judgment in favor of plaintiff below on the first cause of action must be sustained.

The portion of chapter 13, Sess. Laws 1925, which authorizes a tax levy of not to exceed one mill in any one year for the purpose of creating a county courthouse fund, under authority of which the one-mill levy in question was made, is clearly violative of section 57, art. 5, of the Constitution, which provides that:

"Every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title."

And the provision under the purported authority of which the tax in question was levied, is as follows:

"And in addition thereto (meaning the board of county commissioners) is authorized to make and enter a levy of not to exceed one mill of tax in any one year, and under the existing laws such tax shall be annually added to the funds herein provided for."

The title of the act is as follows:

"An act amending chapter 86, Session Laws of Regular Session of 1923, granting power to the board of county commissioners, district judge, and county judge of any county, to use the sinking fund of the county derived from penalties, interests or forfeitures, accrued or to accrue as penalties on delinquent taxes for the purpose of erecting a county courthouse, providing the method of procedure therefor, repealing all acts in conflict therewith."

This title to the act nowhere remotely intimates that the board of county commissioners is going to be authorized to make an additional one-mill tax levy, and is therefore clearly violative of section 57, art. 5, of the Constitution, which reads as above stated.

No one reading the title to this act would in the least expect to find authority for levying an additional one-mill tax, hence, the judgment of the trial court in this regard is affirmed.

For a fuller discussion of the reasons why an act is invalid for being violative of section 57, art. 5, of the Constitution, see State ex rel. Attorney General v. Johnson, 90 Okla. 21, 215 Pac. 945.

The judgment of the trial court on the second cause of action, sustaining the .8836 mills levied for the benefit of the city of Muskogee's general fund, is also sustained for the reason that the question as to whether the balance sheets prepared by the city of Muskogee should show a deficit or a surplus on hands was a question of fact passed on by the trial court under conflicting evidence, and there being sufficient evidence to reasonably sustain his finding in

reference thereto, the judgment in that regard will not be disturbed.

If, as contended, the officers and accountants of the city of Muskogee have so manipulated their books and accounts as to show a deficit where they should show a surplus, then such officers and accountants are subject to removal, and also subject to prosecution under the criminal law, but, under the evidence, the trial court found in favor of the defendant below, and for reasons above stated, the judgment will not be disturbed.

As to the judgment in favor of plaintiff for the one-mill levy alleged to be illegal in the third cause of action, the county attorney confesses that such levy was void, not, however, because of the allegations in plaintiff's petition, but because it is conceded to have been in excess of the six-mill limit prescribed by law; citing Acme Milling Co. v. Bonaparte, 125 Okla. 15, 257 Pac. 284.

As to the contentions made by plaintiff below that the entire tax levied for the city of Muskogee for the purpose of paying the interest on and creating a sinking fund for its outstanding indebtedness is void, it appears that 3.36 mills of the entire levy were made to pay the interest on and create a sinking fund for outstanding utility bonds, issued for the purpose of constructing a waterworks system. It also appears that the city had issued some bonds for the construction of waterworks prior to statehood, under the Act of Congress approved May, 1902, and that some of such waterworks bonds have been issued since statehood, under and in compliance with section 27, art. 10, of the Constitution.

It is not made clear how much or what amount of bonds were issued prior to statehood under the aforesaid act of Congress, nor what amount were issued since statehood under section 27, art. 10, of the Constitution, but so far as the validity of the tax is concerned, and so far as the authority and duty of the city to levy the tax in question is concerned, it is immaterial what amount of the waterworks bonds were issued prior to statehood, and what amount were issued since statehood, for the Act of Congress, viz., chapter 816, p. 200, 32 State. at L., is entitled:

"An act for the protection of cities and towns in the Indian Territory, and for other purposes"

—and said act expressly authorized cities of the Indian Territory, having a population of 2,000 or more, to issue bonds for the construction of waterworks and other utilities.

And section 3 of said act specifically provides:

"That any municipality incurring any indebtedness for the purposes provided for in this act. shall, by ordinance, which shall be irrepealable, provide for the collection of an annual tax sufficient to pay the interest on such bonds, as the same falls due, and also to pay and discharge the principal thereof within 20 years from the date of contracting the same."

Therefore, the city not only had authority, but it was its mandatory duty, to levy a tax sufficient to care for the interest and principal on bonds issued prior to statehood. The Preamble and section 1 of the Schedule of the Constitution, the same being article 25, provides:

"In order that no inconvenience may arise by reason of a change from the forms of government now existing in the Indian Territory and in the Territory of Oklahoma, it is hereby declared as follows:

"Sec. 1. No existing rights, actions, suits, proceedings, contracts, or claims shall be affected by the change in the forms of government, but all shall continue as if no change in the forms of government had taken place."

Section 2, art. 18, of the Constitution provides:

"Every municipal corporation now existing within this state shall continue with all its present rights and powers until otherwise provided by law, and shall always have the additional rights and powers conferred by this Constitution."

Section 15, art. 2, of the Constitution provides:

"No bill of attainder, ex post facto law, nor any law impairing the obligation of contracts, shall ever be passed."

Therefore, whatever levy was made for the benefit of the city's waterworks bonds, issued prior to statehood, was a valid levy, there being no contention that the rate levied for such purposes was greater than necessary. As to the bonds issued for such purposes since statehood, section 27, art. 10, of the Constitution provides:

"Any incorporated city or town in this state, may, by a majority of the qualified property tax-paying voters of such city or town, voting at an election to be held for that purpose, be allowed to become indebted in a larger amount than that specified in section 26 for the purpose of purchasing or constructing public utilities, or for repairing the same, to be owned exclusively by such city; Provided, that any such city or town incurring any such indebtedness requiring the assent of the voters as aforesaid, shall

have the power to provide for, and, before or at the time of incurring such indebtedness, shall provide for the collection of an annual tax in addition to the other taxes provided for by this Constitution, sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof within 25 years from the time of contracting the same."

Hence, for bonds issued since statehood, under the authority and in compliance with the foregoing provisions of section 27, art. 10, of the Constitution, the city was not only expressly vested with authority to make a levy for such purposes, but it was specifically made its duty to make such levy. It will be observed that said section provides:

"That any such city or town incurring any such indebtedness requiring the assent of the voters as aforesaid, shall have the power to provide for, and, before or at the time of incurring such indebtedness, shall provide for the collection of an annual tax in addition to the other taxes provided for by the Constitution, sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof within 25 years from the time of contracting the same."

So it must be seen that at or before the time such indebtedness is incurred and bonds issued as authorized, there must be provision' made for levying an annual tax, a tax to be levied every year, sufficient to pay the annual interest accruals and to create a sinking fund sufficient to pay the principal within 25 years. Under the foregoing constitutional provisions, it cannot be reasonably contended that the city had no authority to make such a levy, nor denied that it was the duty of such city to make such a levy.

In Town of Walters v. Orth, 59 Okla. 99, 158 Pac. 352, it was specifically held that:

"Under article 10, sec. 27, of the Constitution of this state, any contract of any city incurring an indebtedness for any purpose named therein which required the assent of the voters therefor is void, unless such city, before or at the time of incurring such indebtedness, shall provide for the collection of an annual tax in addition to the other taxes provided for by the Constitution, sufficient to pay the interest on such contracted indebtedness as it falls due and to constitute a sinking fund for the payment of the principal thereof within 25 years from the time of contracting the same."

This holding has never been departed from by this court in any case which has been brought to our attention. And, as a sound legal proposition, we are unable to see how the court could conscientiously depart from such holding.

Also, in the following cases, section 27, art. 10, of the Constitution has been held to be self-executing, to wit: State v. Miller, 21 Okla. 448, 90 Pac. 747; Ardmore v. State, 24 Okla. 862, 104 Pac. 913; Dunagan v. Town of Red Rock, 58 Okla. 218, 158 Pac. 1170; Williams v. City of Norman, 85 Okla. 230, 205 Pac. 144.

In view of the foregoing constitutional provisions and foregoing decisions, we hold that the portion of the tax rate involved which was levied for waterworks bonds since statehood, and under the provisions of section 27, art. 10, supra, was a valid levy, and that the judgment of the trial court in favor of plaintiff below for the recovery of the said 3.36 mills, levied for interest and sinking fund for waterworks bonds, was erroneous, and is therefore reversed.

The question as to what may be done with, or what must be done with, the rates collected by a city from the sale of water from its municipally owned plant, will be discussed further on.

As to the portion of the judgment of the trial court in favor of the defendant below, county treasurer, on the fourth cause of action, for the remainder of the 8.96, which was 5.6 mills, levied for interest and sinking fund for the bonded indebtedness other than for waterworks, the judgment is affirmed.

It appears that said city had incurred indebtedness for other purposes than for the construction of a waterworks system, and had issued bonds therefor; the exact purpose for which such bonds were issued is not made to appear, and if there were bonds issued for different purposes, the amount issued for each of such purposes is not made to appear. These matters, however, do not affect the validity of the tax levy, it not being contended that the rate fixed and levied was more than necessary to meet the requirements of such outstanding bonded indebtedness, for section 26, art. 10, of the Constitution provides:

"No county, city, town, township, school district, or other political corporation, or subdivision of the state, shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of three-fifths of the voters thereof, voting at an election, to be held for that purpose, nor in cases requiring such assent, shall any

indebtedness be allowed to be incurred to an amount, including existing indebtedness, in the aggregate exceeding five per centum of the valuation of the taxable property therein, to be ascertained from the last assessment for state and county purposes previous to the incurring of such indebtedness; Provided, that any county, city, town, township, school district, or other political corporation, or subdivision of the state, incurring any indebtedness, requiring the assent of the voters as aforesaid, shall, before or at the time of doing so, provide for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof within 25 years from the time of contracting the same."

Thus, it must be seen that a city may become indebted in an amount beyond the income and revenue provided for a given year, by the assent of three-fifths of the voters of such city, voting at an election held for such purpose, provided such additional indebtedness, when added to the existing indebtedness, does not in the aggregate exceed the five per cent. limit fixed by said section.

But we must also observe the proviso in the above section:

"That any county, city, * * * incurring any indebtedness, requiring the assent of the voters as aforesaid shall, before or at the time of doing so, provide for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof within 25 years from the time of contracting the same."

Therefore, if the city of Muskogee had incurred any indebtedness under the foregoing section, it was its duty and is yet its duty to provide for the collection of an annual tax sufficient to pay the interest on such indebtedness and to constitute a sinking fund for the payment of the principal within the time above prescribed.

Section 28, art. 10, of the Constitution also provides:

"Counties, townships, school districts, cities, and towns shall levy sufficient additional revenue to create a sinking fund to be used, first, for the payment of interest coupons as they fall due; second, for the payment of bonds as they fall due; third, for the payments of such parts of judgments as such municipality may, by law, be required to pay."

It may be that the city of Muskogee had become indebted for some of the things contemplated in section 28, supra, but it must be observed that whatever such indebtedness may be, or for whatever purpose it may have been incurred, it is the duty of the town to levy a tax sufficient to pay, first, the interest coupons as they fall due; next, to pay the bonds as they fall due; and next, to pay such parts of judgments as such city may by law be required to pay.

In adopting these provisions and imposing these duties upon municipalities, it was the evident intention of the framers of the Constitution, as well as of the people in adopting same, that the surety and certainty of payment of bonds issued by municipalities should rest upon the property valuations of a municipality, and the certainty of its officers discharging their duty by levying a tax upon its property sufficient to pay the interest accruals as they fall due and to create a sinking fund sufficient to pay the principal when it falls due, and thereby enable the municipality to sell its bonds at par value and to maintain a staple market for same.

It is also well settled that the principles of law which constitute the conditions precedent for making a contract, and under which a contract is made, enter into and become a part of the contract itself, and of the contractual obligations therein created. See Okla. Cotton Growers' Ass'n v. Salyer, 114 Okla. 77, 243 Pac. 232.

"When a contract is made with a municipal corporation, on the faith that taxes will be levied, legislation repealing or modifying the tax power of the corporation (the city) so as to deprive the holder of the contract of all adequate and efficacious remedy, is within the constitutional inhibition as to the impairment of the obligation of contracts." 6 R. C. L. sec. 338. See, also, cases cited in notes 7 and 8:

The provisions of section 26, art. 10, that an increase in indebtedness as therein authorized shall be by the assent of three-fifths of the voters and shall when added to existing indebtedness not exceed the five per cent. limitation therein provided, and provision for the collection of an annual tax sufficient to pay the interest on and create a sinking fund for the principal within the time prescribed, constitute conditions precedent to the right of a municipality to issue bonds, and such conditions precedent enter into and become material obligations in the contract, and the Legislature is prohibited from impairing such obligations. See section 15, art. 2, of the Constitution, supra.

Therefore, the bonded indebtedness involved in this phase or portion of the fourth cause of action, whether incurred under the

provisions of section 26, art. 10, of the Constitution, or whether same was incurred under the provisions of section 28, art. 10, by an accumulation of judgments against the city, the city in all cases was specifically required to annually levy the tax required by said provisions.

Therefore, the tax levy for such purposes was valid and it was the duty of said city, and said county excise board of Muskogee county, to levy the tax which was required for the year 1925, unless the city already had sufficient surplus in the interest fund and sinking fund to meet its obligations for the year 1925, without levying any tax.

It is contended by plaintiff below:

"That the levy now under discussion was and is illegal for the reason that there exists, or should exist, available funds on hand in said sinking fund, derived from excessive tax levies for said fund during previous years sufficient to meet all, * * * of the bond accrual and interest requirements for said fiscal year."

If it were proven to be true that the city had a surplus in the interest fund and sinking fund sufficient to pay the interest for that year and meet the requirements of the sinking fund for that year, then it was not their duty to make any tax levy for such purposes, nor had they authority to make such levy. See El Reno Who. Gro. Co. v. Taylor, 87 Okla. 140, 209 Pac. 749. But, under the evidence submitted on this question, the trial court found against the contentions of plaintiff below, and his judgment in this regard, being reasonably supported by the evidence, will not be disturbed.

It was contended by plaintiff below, and is so contended here, that section 4507, C. O. S. 1921, controls cities of over 2,000 population in the amount of rates to be charged for a municipally owned utility (in this case a waterworks system), and controls such cities as to what purpose the fund derived from the sale of water must be appropriated.

The court takes judicial cognizance of the fact that the city of Muskogee is under a charter form of government and of the charter provisions, for the reason that such charter provisions are the law of the state pertaining to the municipal affairs of chartered cities, and supersede the statutes pertaining to such municipal affairs. See article 18, Constitution of Oklahoma; also section 4508, C. O. S. 1921. See, also, Taylor v. Cole (Cal.) 257 Pac. 40; State ex rel. Kansas City v. Trimble (Mo.) 298 S. W. 833-37; State ex rel. Strait v. Brooks (Mo.) 293. S. W. 471; City of Ft. Worth v. David-son (Tex.) 298 S. W. 421; City of Electra v. Taylor (Tex. Civ. App.) 297 S. W. 496. Hence, the question as to whether said section 4507, supra, in any wise applies to chartered cities depends upon the rights derived by such cities from constitutional provisions.

Section 3A, art. 18, Williams' Ann. Constitution, which is clearly and completely self-executing, authorizes any city containing a population of more than 2,000 inhabitants to frame and adopt a charter, and provides a complete procedure for the adoption of same, and provides that when said charter is adopted and approved by the Governor, it shall become the organic law of such city in its municipal affairs.

Section 6, art. 18, provides:

"Every municipal corporation within this state shall have the right to engage in any business or enterprise which may be engaged in by a person, firm, or corporation by virtue of a franchise from said corporation."

Chapter 29, C. O. S. 1921, confers the same rights upon cities which are not under a charter form of government, but are under the provisions of the statute.

But the right of the city of Muskogee to engage in a business enterprise and to construct municipally owned utilities and to fix the price for its commodities depends upon its charter provisions, provided such charter provisions are not in conflict with any provision of the Constitution, and not upon the provisions of the statute. And subdivision (d), sec. 1, art. 1, of the charter of the city of Muskogee expressly authorizes the city to purchase, construct, own and operate certain enumerated utilities, including waterworks, and to issue bonds therefor. Subdivision (f), Id., provides that the city shall have all powers, privileges, and functions which by or pursuant to the Constitution of this state have been or could be granted to, or exercised by, any city of the first-class.

Article 5 of said charter, in section 66, provides as follows:

"Subject to the power reserved by the Constitution of this state to the Corporation Commission, all power to regulate the rates, fares and charges for service by public utility corporations is hereby reserved to the people to be exercised by them by ordinance of the council or in the manner herein provided for initiating or referring an ordinance. Any right of regulation shall further include the right to require uniform, convenient and adequate service to the public and reasonable extensions of such service and of such public utility works."

Subdivision 4, sec. 18, art. 9, of the Constitution provides in part:

"The authority of the Commission (subject to review on appeal, as hereinafter provided) to prescribe rates, charges, and classifications of traffic, for transportation and transmission companies, shall, subject to regulation by law, be paramount; but its authority to prescribe any other rules, regulations or requirements for corporations or other persons shall be subject to the superior authority of the Legislature to legislate thereon by general laws: **Provided, however,** that nothing in this section shall impair the rights which have heretofore been, or may hereafter be, conferred by law upon the authorities- of any city, town, or county to prescribe rules, regulations, or rates of charges to be observed by any public service corporation in connection with any services performed by it under a municipal or county franchise granted by such city, town, or county, so far as such services may be wholly within the limits of the city, town or county granting the franchise. * * *"

In view of the foregoing provisions of the Constitution and provisions of the charter of the city of Muskogee, we must conclude that said section 4507, C. O. S. 1921, had no application to cities under a charter form of government in the matter of rates which may be charged by such city for the water it sells nor to the purpose to which the profits derived therefrom may be appropriated.

When a city has framed and adopted a charter in full compliance with the provisions of the Constitution, and has procured the approval thereof by the Chief Executive of the state, it then has a commission from the state to control its own purely municipal affairs, free from the control of the Legislature in such affairs.

The correctness of this conclusion and of this right of chartered cities is clearly recognized and expressly sanctioned by section 4508, C. O. S. 1921, in the following provision, to wit:

"When a charter for any city of this state shall have been framed, adopted and approved according to the provisions of this article, and any provisions of such charter shall be in conflict with any law or laws relating to cities in force at the time of the adoption and approval of such charter, the provisions of such charter shall prevail and be in full force, notwithstanding such conflict, and shall operate as a repeal or suspension of such state law or laws to the extent of such conflict; and such state law or laws shall not thereafter be operative in so far as they are in conflict with such charter."

By the foregoing provision, which is a part of the same act as section 4507, supra, the Legislature has completely surrendered all right to control chartered cities in their municipal affairs.

This section has been construed in opinions of this court reported in Owen v. City of Tulsa, 27 Okla. 264, 111 Pac. 320; Mitchell v. Carter, 31 Okla. 592, 132 Pac. 691; State ex rel. Burns v. Linn, Dist. Judge, 49 Okla. 526, 153 Pac. 826; City of Collinsville v. Ward, 64 Okla. 31, 165 Pac. 1145; in each of which opinions it was held that charter provisions prevailed over statutes pertaining to purely municipal affairs.

So, for the reasons herein given, we now hold that section 4507, C. O. S. 1921, does not apply to chartered cities.

The judgment in favor of plaintiff below on his first cause of action is affirmed; likewise the judgment in favor of defendant, county treasurer, below, on the second cause of action is affirmed.

The judgment in favor of plaintiff below on his third cause of action is affirmed.

The judgment in favor of plaintiff below on the fourth cause of action for the 3.36 mills levied for interest and sinking fund levied for waterworks bonds is reversed, with directions to render judgment for defendant, county treasurer, below.

The judgment in favor of defendant, county treasurer, below, on plaintiff's fourth cause of action on the levy made for bonds other than waterworks bonds is affirmed.

Affirmed in part, reversed in part, with directions.

All the Justices concur.