## PROTEST of TRIMBLE et al.

No. 21565. Opinion Filed June 16, 1931.

Rehearing Denied July 28, 1931.

Gordon Stater and Adelbert Brown, for protestants.

W. L. Coffey, County Attorney, and Hugh Webster, Assistant County Attorney, for protestee.

ANDREWS, J. The protestants filed their protest of taxes under the provisions of Initiative ,Petition No. 100. After hearings by the Court of Tax Review, the protests were denied in part and sustained in part. From the judgment of that court, the protestants appealed as to certain items and the protestee appealed as to certain items. The tax involved is for the fiscal year beginning July 1, 1929.

The protestants appealed from the judgment of the Court of Tax Review sustaining their protest of 4 mills for the Tulsa city general fund levy in part and denying the same as to 1.253517 mills. The judgment of that court was that 1.253517 mills

was valid, that "being the levy that would have been necessary to provide the estimated needs for the library, cemetery and park funds of said city. * * *"

The record shows that the city officials prepared a financial statement and estimate of needs for the ensuing fiscal year, itemized in form and in accordance with the statute, for current expense purposes in the sum of $1,450,236.25; for cemetery fund, $8,000; for library fund, $6,500; for .park fund, $9,500, making a total of $1,618,236.25 for those purposes. The financial statement and estimate appear to be in all things regular. When they were submitted to the county excise board, the county excise board acted under the provisions of chapter 351, Session Laws of 1929, and instead of fixing a separate rate of levy for each of the general fund, cemetery fund, library fund, and park fund, it fixed a rate of levy for the combined current expense fund, cemetery fund, park fund, and library fund at 10 mills.

The protestants contend, and the protestee does not deny, that chapter 351, Id., is unconstitutional and void. The protestee in nowise relies thereon, but contends that it was the duty of the county excise board to make an appropriation for each of the funds and to fix a. rate of levy for each of the funds, under the authority of Board of Education v. Excise Board, 86 Okla. 24, 206 Pac. 517. We agree with that contention. In Excise Board of Woodward County v. Reid, 143 Okla. 204, 288 Pac. 458, this court held:

"If the estimated needs of a municipality for the general fund expense of the municipality can be supplied within the statutory limitations, it is the duty of the excise board to make the appropriations therefor in the amounts estimated to be needed for that purpose, and the excise board is not authorized to make the appropriations in a lesser amount than that estimated to be needed if the amount estimated to be needed can be appropriated within the statutory limitations."

The excise board was required to make an appropriation for each of the several funds and to fix a rate of levy for each. The rate of levy for current expenses without an election could not exceed 6 mills. There was no election. Section 9692, C. O. S. 1921; Oklahoma News v. Ryan, 101 Okla. 151, 224 Pac. 969. Under the provisions of chapters 7, 8, and 69, Session Laws of 1927, neither the library fund, park fund, nor cemetery fund is a part of the current expense fund.

The record shows an intent on the part of the city officials to have appropriations made

and rates of levy fixed for the various funds, and, it being the duty of the county excise board to make such appropriations and to fix such rates of levy, we find no error in the judgment of the Court of Tax Review approving the appropriations for park, cemetery, and library purposes at the amounts shown to be necessary by the financial statement and estimate and in sustaining the rates of levy necessary to produce those appropriations. The rate of levy for current expense purposes was reduced from 8.746 to 6 mills by the Court of Tax Review and no appeal was taken therefrom.

We find no error as to this contention, and the judgment of the Court of Tax Review thereon is affirmed.

The protestants appealed from the judgment of the Court of Tax Review, denying their protest of 1.25 mills for the Tulsa county highway fund, and claim that a correct financial statement would show available funds for that purpose over the amount of the estimated needs therefor, and that for that reason no ad valorem tax levy was necessary. They contend that the true surplus was in excess of that shown by the financial statement in that there was wrongfully deducted from the balance on hand, as a liability, the sum of $195,983.82. If that sum should have been deducted, the judgment is correct, and if it should not have been deducted, then no tax levy was necessary and the judgment should be reversed.

The financial statement shows the amount in question opposite the words, "Unexpended Appropriation." If it was an unexpended appropriation, the same lapsed with the close of the fiscal year and could not be considered as a liability and should not have been deducted from the balance on hand. C. D. Coggeshall & Co. v. Smiley, Co. Treas., 142 Okla. 8, 285 Pac. 48. The Court of Tax Review heard evidence in explanation of the item to the effect that the item was reserved to care for the contingent liability arising from a protest of taxes for the preceding year. Such evidence was admissible for the purpose of explanation. C. D. Coggeshall & Co. v. Smiley, Co. Treas., supra. It appears from the evidence that a 1-mill levy for the same fund for the preceding year was protested. The county officials, pursuant to the provisions of Initiative Petition No. 100, suspended the taxes received from the protested tax levy and the appropriation for that fund, to the extent of the amount of the protest. The protests were undetermined on June 30, 1929. In making the financial statement at the close of the year the county officials showed as assets the proceeds of the protested taxes. Under the provisions of Initiative Petition No. 100, county officials are required to refund to the taxpayers the amount of the protested tax paid in, if the protest is sustained. The amount therefore was a contingent liability on June 30, 1929, and as such was shown as a liability on the financial statement and deducted from the balance on hand. Had the amount not been so shown, the balance on hand carried over into the next year as a surplus would have authorized the making of an appropriation for the next year against which valid contracts could have been incurred, with the result that there would have been no fund from which refunds could have been made to the taxpayers in the event the tax protests were sustained.

The tax protests were thereafter sustained in part and overruled in part, and that fact is used in the argument and makes the proposition presented confusing, but when it is kept in mind that the financial statement is made as of the close of the fiscal year, the confusion is eliminated. The financial statement must reflect the true fiscal condition as of the close of the fiscal year. The fact that thereafter tax protests for prior years were sustained in part and overruled in part cannot be considered as affecting the financial statement in question. As of the close of the fiscal year, with the explanation shown by the record, the financial statement was a correct statement. We suggest that in the future such a liability be correctly denominated on the financial statement, as it is in nowise an "Unexpended Appropriation." It is a reservation for the purpose of refunding protested taxes, and as such it may be deducted from the balance on hand, although the liability is contingent.

In C. D. Coggeshall & Co. v. Smiley, Co. Treas., supra, we did not have before us the question of protested taxes suspended under the provisions of Initiative Petition No. 100, and therefore did not therein consider such an item.

When we keep in mind the fact that, under the provisions of Initiative Petition No. 100, all taxes paid under a protested tax levy may be refunded to the taxpayer, the results predicted by the protestants herein are found to be imaginary.

Having determined this question, we deem it unnecessary to determine other contentions made in connection with the same item. The judgment of the Court of Tax Review on this contention is affirmed.

The protestants appealed from the judgment of the Court of Tax Review, denying their protest of 1.91299 mills for the inde-

pendent separate school fund. It is admitted in their brief that that levy was legal and the appeal has been dismissed as to that item of the protest.

The judgment of the Court of Tax Review on that item is affirmed.

The protestee appealed from the judgment of the Court of Tax Review, sustaining the protest of .84 mill for the county general fund levy, and presents three contentions.

The basis of the protest, as sustained by the Court of Tax Review, was that $88,600, appropriated during the fiscal year commencing July 1, 1928, for the construction of what is called the "Sand Springs" bridge, and an appropriation of $30,000 during the same fiscal year for the construction of what is called the "Horse Pen" bridge, were not used for the construction of those bridges and that those appropriations were contracted against for purposes other than for those two bridges without a supplemental appropriation or transfer. The protestants contended and it was held that, inasmuch as those appropriations were not used for the purposes for which they were made and were not transferred legally, they constituted unexpended appropriations which lapsed at the end of the fiscal year commencing July 1, 1928.

The first contention of the protestee is that, if the contracts made were illegal, the subsequent payment of claims against them constituted a dissipation of funds such as to preclude the excise board or the Court of Tax Review from considerating the same as a surplus. The contracts were made between January 24, 1929, and June 3, 1929. They were not based on valid appropriations and they were void. On July 1, 1929, no valid contracts having been entered into, those appropriations lapsed. Had funds been actually paid out on the illegal contracts entered into, the balance on hand would have been reduced to that extent, but money had not been paid out on July 1, 1929. The financial statement must reflect the true fiscal condition as of that date. The fact that the board of county commissioners did not file its financial statement and estimate of needs until September 4, 1929, and that the excise board did not approve the same until September 26, 1929, did not authorize the inclusion in the financial statement of disbursements made after July 1, 1929. The rule stated in Bristow Battery Company v. Payne, 123 Okla. 137, 252 Pac. 423; Gulf, C. & S. F. Ry. Co. v. Excise Board of Love County, 141 Okla. 34, 283 Pac. 1003, and Dickinson v. Blackwood, 76 Okla. 175, 184 Pac. 582, has no bearing here, for in those cases the amount involved

had been expended during the fiscal year. In this case, while the contracts were made during the fiscal year, the contracts were void and no expenditure thereunder was made until after the beginning of the next fiscal year. It cannot here be said that the funds were not on hand July 1, 1929, and the record here shows that they were on hand at that time.

We quote from the brief of the protestee as follows:

"Reference to protestee's Exhibit No. 1 will show that with the exception of $946 all of this $22,676.65 was paid out prior to the approval and certification of the 1929 budget by the excise board on September 26, 1929."

Reference thereto further discloses that they were paid out after July 1, 1929, and as such may not be considered in the financial statement for the fiscal year ending June 30, 1929. The Court of Tax Review found that there were no valid incumbrances against the balance on hand which could be justified under a "Reserve for Appropriations," and sustained this protest. There was no error in that holding.

The protestee's second contention was that the balance on hand on June 30, 1929, was reserved for the payment of valid contracts entered into during the fiscal year commencing July 1, 1928. That contention was not supported by the evidence. The Court of Tax Review so found.

The protestee's third contention is that "Unincumbered Balance" means unincumbered balance of funds on hand. That contention is based on an excerpt from the opinion of this court in C. D. Coggeshall & Co. v. Smiley, Co. Treas., supra. The language used therein was intended to and does mean what it says, but it has no application to the facts in this case. While the uncollected taxes for preceding years constitutes no part of the balance on hand, or "Unincumbered Balance," uncollected taxes for the year next immediately preceding the fiscal year in question may be included in the estimate of probable income from ad valorem taxation during the preceding year under certain restrictions. In re Monsell, 142 Okla. 130, 285 Pac. 836. The attempted explanation of the protestee of the "Reserve for Appropriations" was not supported by the evidence and the Court of Tax Review sustained the protest.

We find no error in the judgment of the Court of Tax Review as to the .84 mill for the county general fund levy, and that judgment is affirmed.

The protestee appealed from the judgment

of the Court of Tax Review, sustaining the protest of 2.963 mills for the Tulsa city sinking fund. In the brief the question is divided into three items, and there are five contentions made as to the first item and one as to each of the second and third items.

The first item consists of $260,747.44, on which the Court of Tax Review found that the Tulsa city sinking fund was illegal to that amount on account of the improper inclusion of that amount as a liability on June 30, 1929. There was no such liability shown, but the amount thereof was reserved for the payment of interest coupons falling due during the next fiscal year. That practice was followed by the city of Tulsa for a number of years, and in Re Gypsy Oil Company, 141 Okla. 291, 285 Pac. 67, Re Bliss, 142 Okla. 1, 285 Pac. 73, C. D. Coggeshall & Co. v. Smiley, Co. Treas., supra, and Aaronson v. Smiley, Co. Treas., 140 Okla. 255, 283 Pac. 789, the practice has been disapproved.

The first contention on this item is that this court may not declare a surplus of funds that does not exist, with which statement we agree, but it has no application to the facts shown by this record. Here the financial statement shows the true fiscal condition as it existed on July 1, 1929. The fact that this court directed a refund of taxes on December 10, 1929, to be made from the taxes levied for the fiscal year prior to that commencing July 1, 1929, cannot in anywise affect the financial statement and estimate of needs as of July 1, 1929. A determination of the validity of the tax levy must be made from the financial statement and estimate as of July 1, 1929. The subsequent fiscal affairs of the municipality may result in a dissipation of the entire balance on hand July 1, 1929, but that fact would not in anywise affect a tax levy for the current fiscal year. The contention of the protestee is that because this court, on December 10, 1929, ordered a refund of taxes paid under protest for the fiscal year commencing prior to July 1, 1929, the Court of Tax Review, in 1929, should permit the deduction from the balance on hand July 1, 1929, of the amount ordered by this court to be refunded. We cannot so hold. To do so would be to destroy the regularity of tax procedure. Had the refund been ordered to be made from the funds of the fiscal year in question, the correction could have and should have been made under the provisions of Initiative Petition No. 100.

The second contention on the first item is in effect the same as the first contention. It has been sufficiently discussed thereunder.

The third contention on the first item is that in fixing the rate of levy the excise board improperly deducted the amount of $39,087.13 as estimated income to the sinking fund and that, though the needs of the municipality for that purpose be shown to be excessive, the amount of the deduction therefor should not include the sum so deducted by the excise board. That there was deducted the sum of $39,087.13 as estimated income from sources other than tax levy is shown by the record, and it is further shown thereby that the amount thereof was an estimate of the amount to be received from the interest on daily balances and earnings on investments. No such estimate of receipts could have been included in the computation of the excise board in determining the rate of tax levy to be fixed for sinking fund purposes. Protest of Chicago, R. I. & P. Ry. Co., 143 Okla. 161, 288 Pac. 337; Protest of St. L.-S. F. Ry. Co., 143 Okla. 105, 287 Pac. 1028.

The fourth contention on the first item is that there may be reserved from a balance on hand at the close of a fiscal year a sufficient amount to pay interest coupons maturing July 1, 1929. In support thereof the rule stated in McMahan v. Board of Education, 142 Okla. 110, 285 Pac. 953, is cited. The opinion in that case is misconstrued. The language therein used is "to July 1, 1931," and was not intended to and did not include items of July 1, 1931. Interest coupons maturing July 1, 1929, in the instant case did not mature during the fiscal year commencing July 1, 1928, and there could be no reserve from the balance on hand at the close of the fiscal year commencing July 1, 1928, for the payment of those interest coupons. The Court of Tax Review so held and there was no error in so holding.

The fifth contention under the first item is wholly without merit. It is not supported by the authorities cited.

On the first item the judgment of the Court of Tax Review is correct except for the failure of that court to consider the error of the county excise board. The judgment of the Court of Tax Review on the item of $260,747.44 is reversed, and the cause is remanded to that court, with directions to reduce the amount of the reduction heretofore made by that court by deducting from the amount of reduction so made the sum of $39,087.13 and to render judgment for the difference.

The second item consisted of $282,000 which was reserved for installments of bonds falling due during the next fiscal year. That contention has been fully covered by our discussion of the first contention on the first item of the Tulsa city sinking fund.

The third item is $36,035. It is contended that reduction in the amount of the bond accruals was excessive under the rule stated in McMahan v. Board of Education, supra, C. D. Coggeshall & Co. v. Smiley, Co. Treas., supra, and In re Protest of Gypsy Oil Company, supra. That contention was settled by the rule announced by this court in Jones, Co. Treas., v. Blaine, cause No. 20026, opinion filed January 27, 1931 (149 Okla. 153, 300 P. 369). The judgment of the Court of Tax Review was more liberal to the protestee than the opinion in that case would warrant. There is no error of which the protestee can complain.

The protestee appealed from the judgment of the Court of Tax Review as to .5 mill for school district No. 22 sinking fund levy. The contention made thereon is identical with that discussed by this court in the first contention on the first item of the Tulsa city sinking fund, and under the rule therein stated the judgment of the Court of Tax Review is affirmed.

The cause is remanded to the Court of Tax Review for further proceedings in conformity herewith.

LESTER, C. J., CLARK, V. C. J., and RILEY, HEFNER, CULLISON, SWINDALL, McNEILL, and KORNEGAY, JJ., concur.