## PROTEST OF CHICAGO, R. I. & P. RY. CO.

No. 22277. Opinion Filed Sept. 8, 1931.

W. R. Bleakmore, W. L. Farmer, John Barry, and Robert E. Lee, for protestant.

Clarence Tankersley, Co. Atty., and Paul C. Thorn, Asst. Co. Atty., for protestee.

ANDREWS, J. This is an appeal by the protestant from a judgment of the Court of Tax Review in favor of the protestee. The protest involved the sinking fund levies for Pottawatomie county and Earlsboro township in that county for the fiscal year commencing July 1, 1930. The basis of the protest is that interest accruing from the deposit of the sinking fund in the various banks should be apportioned and credited to the sinking fund and not to the common school fund of the county.

The rule with reference to the sinking fund of a county and the rule with reference to the sinking fund of a township are materially different. For that reason those rules will be discussed separately.

In 1905 the Territorial Legislature provided that the county treasurer should deposit daily all of the funds and money of whatsoever kind that shall come into his possession by virtue of his office as such county treasurer in his name as such county treasurer, in one or more responsible banks located in the county and designated by the board of county commissioners as the county depositories. That was what is commonly known as the county depository law. The provision was revised by the commission that prepared the Revised Laws of Oklahoma of 1910, and as revised the same appears in that Code as section 1540. It was revised by the Legislature at the 1919 Session, page 405, c. 284, and that revision appears as section 5727, C. O. S. 1921. It was revised by the 1925 Session, at page 138, c. 88, and by the 1929 Session, at page 454, c.

327. The history of that legislation reveals an intent that county funds should be deposited in banks that would pay interest on daily balances. There is nothing therein to indicate what disposition should be made of the interest so earned and collected. Attention is called to the fact that the county depositories provided for therein are entirely distinct from another county depository subsequently provided for. That distinction will be pointed out hereinafter.

At the 1913 Session, the Legislature provided, by section 2, ch. 12, S. L. 1913 (section 8581, C. O. S. 1921), that, on the 30th day of June of each year, the county treasurer shall apportion and place to the credit of the sinking fund account of the various school districts of the county, all interest collected from the investment of sinking funds, as provided by section 1 of that act, and "all interest loaned and collected upon such sinking fund from every source whatsoever; provided, that the amount so credited to the sinking fund account, of each district, shall bear the same ratio to the whole amount of interest so collected as the amount to the credit of the sinking fund account of such district bears to the whole amount credited to the sinking fund account of all the school districts of the county."

The Legislature, at the 1915 Session, by section 2, ch. 94, S. L. 1915 (section 8578, C. O. S. 1921), provided that "all interest loaned and collected upon such school district sinking fund money from every source whatsoever" should be "credited to the sinking fund account of each district" and that the "amount so credited to the sinking fund account of each district shall bear the same ratio to the whole amount so collected as the amount to the credit of the sinknig fund account of such district bears to the whole amount credited to the sinking fund account of all the school districts of the county." Thereby the interest on county funds provided for by section 8581, supra, was eliminated. The interest directed to be apportioned by section 8578, supra, was the interest arising from the investment of school district sinking funds. That section provided a method for distributing interest arising from the investment of school district sinking funds held by the county treasurer, but it made no provision for the interest accruing from the investment of county funds. Under the provisions of that act the interest on sinking funds of independent school districts accrued to the independent school districts, each common school district received its fair share of the interest

on the investment by the county treasurer of the school district sinking funds held by the county treasurer and the county received the interest on the investment of its sinking fund.

Had there been but one act adopted at the 1915 Session there would be no question as to the intent of that Legislature, but that Legislature also adopted chapter 146, S. L. 1915. That act was subsequently amended and does not appear in C. O. S. 1921. Section 1 of that act required the county treasurer to place to the credit of the common school fund of the county, for distribution as all other common school funds, "all the interest money now on hand accrued on the daily balances of the various county school district and sinking fund accounts." That provision applied only to funds on hand and it was not prospective in effect. It is material to the discussion herein for the reason that it was the first legislative expression of an intent that interest should be credited to the common school fund of the county, rather than to the sinking fund of the school districts, as theretofore provided. In our opinion it was not in conflict with any provision of chapter 94, S. L. 1915, which chapter was prospective in effect and did not apply to interest then on hand. Section 2 of chapter 146, S. L. 1915, provided that the county treasurer should place to the credit of the several funds the pro rata share of interest received on daily balances, in proportion to the average amount of each fund on deposit during the month. There was no conflict between that provision and the provisions of chapter 94, S. L. 1915. By the provisions of both of the acts adopted at the 1915 Session, interest accruing on the county sinking fund in the future was to be credited to the county sinking fund.

The 1917 Session of the Legislature again changed the provisions for the disposition of interest accruing from the deposit of the county sinking fund in banks. Chapter 221, S. L. 1917. By section 1 thereof (section 8583, C. O. S. 1921), section 1 of chapter 146, S. L. 1915, was amended to provide that the county treasurer shall "place to the credit of the common school fund of the county for distribution, as all other common school funds, all the interest money now on hand accrued on the average daily balances of money deposited with banks in pursuance of the provisions of the county depository law," and that "all such interest moneys hereafter collected shall at the close of each month be apportioned and credited

to the common school fund of the county." By that provision the Legislature definitely stated that the interest on hand and thereafter collected from the county sinking fund deposit in banks should be credited to the common school fund. That intent is clear from the repeal, by section 2 of this act, of section 2 of chapter 146, S. L. 1915. The provisions of chapter 221, S. L. 1917, have not been changed by subsequent legislation. They are now in force. Under those provisions the interest arising from the deposit of the county sinking fund in the county depositories should be credited to the common school fund of the county and not to the sinking fund of the county. The Court of Tax Review so held, and its judgment thereon must be affirmed.

The decision of this court in State ex rel. Power v. Wenner, Co. Treas., 121 Okla. 190, 249 Pac. 408, relating to interest arising from the deposit of a special road fund by the county treasurer, is to the same effect.

Attention is called to the fact that section 2 of chapter 12, S. L. 1913 (section 8581, C. O. S. 1921), has not been repealed in terms and that only a part thereof has been repealed by implication. That portion thereof providing that "all interest collected from the investment of sinking funds, as provided in section 1 of this act," should be apportioned and placed "to the credit of the sinking fund account of the various school districts of the county" in the manner therein provided, has been repealed neither in terms nor by implication, and the interest arising from the investment of the county sinking fund in "county warrants, township warrants and school district warrants, school district bonds, township bonds, county bonds, road bonds and town and city bonds" is now required to be apportioned and placed to the credit of the sinking fund account of the various school districts of the county. We are calling attention to this fact in order that there may be no misunderstanding of the effect of this decision, though the question of the application of the funds received from the investment of the county sinking fund in bonds and warrants, as aforesaid, is not presented herein. In our opinion the Legislature has provided a different method of apportionment and credit for interest collected from the investment of the county sinking fund in bonds and warrants from that for interest collected from banks on daily deposits of funds of the sinking fund of the county.

The construction herein given to chapter 221, S. L. 1917 (section 8583, supra), is questioned by the protestant and a provision of chapter 104, sec. 2, S. L. 1917 (sec. 8621, C. O. S. 1921), to the effect that the interest on average daily bank balances "shall be credited to the respective funds and accounts so earning the same," is cited in support of protestant's petition. It is said that section 8583, supra, and section 8621, supra, were adopted at the same session of the Legislature; that both sections should be given effect, and that when construed together section 8583, supra, applies up to July 1, 1917, and section 8621, supra, applies after that date.

We agree that the acts should be construed together and that effect should be given to both if possible. Chapter 104, S. L. 1917, was an act designating and creating an official county depository different and distinct from the official depositories then existing and continuing the official depositories then existing without change material herein. Various banks had been authorized to be designated as county depositories. That provision was not materially changed, but the county treasurer was designated as the official depository. By that act the county treasurer was given a dual capacity—county treasurer and official depository for the county. Theretofore certain county officers had deposited funds on hand in the various banks that had been designated as official depositories. Thereafter those officers were required to deposit those funds with the county treasurer, and he in turn deposited them in the bank official depositories. The act provided for the machinery necessary to make the new plan "workable." As a part of that machinery it was provided that the county treasurer, as county depository, should credit the county officer with the funds deposited with the county treasurer as county depository, by the county officer, and with the interest earned thereby and paid on that deposit to the county treasurer as county depository by the county bank depositories. There was a provision that the county officer should, from time to time, pay to the county treasurer as county treasurer, that portion of the fund of the county officer held by the county treasurer as county depository, for the use and benefit of the county. That included the interest that had been paid by the county bank depositories to the county treasurer as county depository and credited by him to the county officer. By that means the interest was paid over to the county treasurer as county treasurer. The plan contained in the act was a new one in this state, and the Legislature was doubtless interested in the adoption of the

plan to a greater extent than it was in providing for the disposition of the interest so collected. This is shown by the language of the act providing that "all interest collected on moneys deposited pursuant to the provisions hereof shall be paid into the county treasury monthly by the authority to whose account the same shall have accrued and shall be credited to the general or contingent fund of the county, except that in civil cases all interest earned on funds, other than court costs, deposited in court by litigants shall follow the fund and be disposed of as the court orders." Since there is no "general" fund of a county and no "contingent" fund of a county, it is apparent that little, if any, consideration was given to how the interest should be apportioned. That was a mere detail in the body of the act. The disposition of the interest is controlled by the other act adopted at the same session, to wit, section 8583, supra. As we view the act in question, the county clerk is required to deposit funds collected by him with the county treasurer daily; the county treasurer receives those funds as county depository, and as such he deposits them in a county bank depository; that bank pays interest on the deposit, and when it is received by the county treasurer as county depository, he credits the county clerk with the amount thereof; when the county clerk receives credit for the interest, he gives the county treasurer as county treasurer a check on the county treasurer as county depository for the amount of interest; the county treasurer then credits the same to the common school fund, as provided by section 8583, supra, and that balances the books.

The township depository law was adopted at the 1911 Session. Section 1, chapter 72, S. L. 1911 (section 8618, C. O. S. 1921). By the provisions of section 2, chapter 12, S. L. 1913 (section 8581, C. O. S. 1921), interest accruing from the deposit of township sinking funds in banks is required to be credited to the sinking fund of the township. Section 1, chapter 94, S. L. 1915 (section 8577, C. O. S. 1921), changed the provision as to rate of interest on deposits, but that act did not change the provision for the crediting of the interest to the sinking fund. The other acts hereinbefore reviewed make no provision for other distribution of the interest on the sinking fund of the townships. Section 8581, supra, is in full force as to township funds and it is controlling. The judgment of the Court of Tax Review was in conflict with the provisions thereof and would be reversed by this court had there been a showing of interest on hand to the credit of the sinking fund of the township. However, there was no showing of any such interest being on hand. The allegations of the protest were that there should be a deposit of the township sinking fund, and that if it was so deposited it would produce an income. In other words, the allegations of the protest are that estimated income from interest on the deposit of the township sinking fund should be considered in fixing the rate of levy for the township sinking fund. We have heretofore held that interest estimated to be received from deposits may not be considered in fixing the rate of levy of a municipality. Protest of Trimble, 151 Okla. 74, 300 Pac. 406.

The judgment of the Court of Tax Review is affirmed.

LESTER, C. J., and RILEY, CULLISON, SWINDALL, McNEILL, and KORNEGAY, JJ., concur. CLARK, V. C. J., and HEFNER, J., absent.