### BERRYMAN et al. v. BONAPARTE.

No. 20421. Opinion Filed Feb. 23, 1932.

Adelbert Brown, Gordon Stater, E. G. De-Parade, Everest, Dudley & Brewer, and Wilson & Wilson, for plaintiffs in error.

George M. Callihan, Co. Atty., I. L. Harris, Asst. Co. Atty., M. W. McKenzie, Mun. Counselor, and A. L. Hull, Asst. Mun. Counselor, for defendant in error.

SWINDALL, J. Four separate suits were instituted in the district court of Oklahoma county, Okla., on the same day. Each of these suits was brought for the recovery of an alleged illegal tax made for the city of Oklahoma City for the fiscal year beginning July 1, 1928. E. B. Bonaparte, county treasurer of Oklahoma county, was the defendant in each case. There are two questions of law involved in each case. The first one is the same in each and will only be stated in the first case. The second proposition will only be stated in the other cases. They are as follows:

District court case No. 55512, C. T. Berryman v. E. B. Bonaparte: (1) The failure of the excise board to certify the rates of levies to the county assessor. (2) The levy of .45 mills for library purposes and .50 mills for park purposes in excess of the 6 mill alleged limitation, and failure to hold an election.

District court case No. 55513, William Jacquart v. E. B. Bonaparte: (2) The failure to deduct the surplus balance from the previous fiscal year in determining the tax levy.

District court case No. 55514, J. W. Faherty v. E. B. Bonaparte: (2) Excess levy because of excessive computation of the amount needed for bond accruals.

District court case No. 55515, H. M. Haley v. E. B. Bonaparte: (2) The water works issue.

The main issue in each case presented to the trial court and urged in the brief of the plaintiffs in error was the failure of the excise board to certify the rates of levies to the county assessor. An examination of the case-made discloses that practically all of the testimony and evidence related to this issue. This evidence was introduced in the Berryman Case. The record in the Jacquart Case contains the following stipulation:

"It is further stipulated and agreed that all of the evidence introduced in district court case No. 55512, entitled Berryman versus Bonaparte, be considered as introduced in evidence in this case, and made a part of this record."

The record in the Faherty Case contains the following stipulation:

"It is hereby stipulated by and between the plaintiff and defendant, through their respective attorneys of record, that all of the evidence and testimony introduced in case No. 55512, being the case of Berryman versus Bonaparte, together with all of the exceptions and rulings thereon, be incorporated herein and made a part of this record and considered as introduced as the evidence in this case."

The record in the Haley Case contains the following stipulation:

"It is further stipulated and agreed that all of the evidence and testimony, together with all objections thereto as introduced in case No. 55512, entitled Berryman versus

Bonaparte, be considered as introduced in this case, and made a part of this record. * * *"

The trial court on the 3rd day of December, 1928, rendered judgment for the plaintiffs in error, who were plaintiffs in the respective cases in the trial court, for the full amount sued for, on the main issue, the failure to certify the rates of levies, and upon the second issue in the Berryman Case made the following findings, among others:

"The court further finds that for the fiscal year beginning July 1, 1927, a levy of .45 mills for library purposes and a levy of .50 mills for park purposes for the city of Oklahoma City was made by the excise board of Oklahoma county, for the benefit of the general or current expense fund of the city of Oklahoma City, together with other levies for the benefit of said city. The court further finds that prior to the making of said levy, the city of Oklahoma City had prepared and submitted, in the manner and form provided by law, to the excise board of Oklahoma county, a statement of the financial condition and an estimate of the needs for said fiscal year, as required by law, all of which the court finds to be true and correct. The court further finds that there was no election called authorizing an additional levy beyond 6 mills provided for general or current expense fund, but that the levy of .45 mills for library purposes and .50 mills for park purposes were, and are, authorized in law as proper levies in addition to the levy of 6 for general fund purposes, and therefore, said levy for said purposes was properly authorized by the excise board and by said board regularly approved and the levies made therefor. The court further found that it was the duty of said excise board of said county, after the levies had been properly made as provided by law, to cause such levies to be properly certified, signed and delivered to the county assessor for the purpose of extending the same upon the tax rolls against the properties of plaintiff and other properties in said city liable therefor, but that the excise board of said county failed to properly and legally certify, or cause to be certified, the levies for said fiscal year, including the levies for the city of Oklahoma City, and that by reason thereof said levies were not properly, legally and validly levied against the assessable valuation of the property of plaintiff, and that, therefore, the plaintiff is entitled to recover the sum of $2.23 on account of the failure of said excise board to properly certify or cause to be certified the levies of said fiscal year to the county assessor of Oklahoma county."

The court further found that the cause of action of the plaintiff in so far as it relates to the levy of an alleged illegal and assessable tax for library and park purposes, when added to other levies for current expense purposes, is claimed to exceed the 6 mill levy authorized by law to the extent of said millage, is without merit and that plaintiff is not entitled to recover upon that theory of the case, to which finding the plaintiff excepted. The court thereupon rendered judgment in favor of the plaintiff for the recovery of said sum of $2.23 for the reason the levy was not properly certified. The plaintiff and defendant within the time provided by law each filed a motion for new trial.

In the Jacquart Case, on December 3, 1928, the court found the levy to be legal, but sustained the prayer of the plaintiff's petition upon the ground that the same was not certified by the excise board to the county assessor. In this case motion for new trial was filed by each party. Similar findings and judgments were entered in the Faherty Case and the Haley Case upon the same grounds and for the same reasons. Motion for new trial in each of those cases was duly filed by the respective parties the same as in the two first mentioned cases.

On December 31, 1928, during the same term of court, the district court in each of the aforementioned cases vacated the judgment entered December 3rd and entered judgment in favor of the defendant in each case. The plaintiffs in due time filed motion for new trial, which was by the court considered and overruled, and exceptions allowed, notice of appeal given in each case. An appeal was filed in this court consolidating each of said actions in accordance with the stipulations entered into in the trial court. A motion was filed by the defendant in error to dismiss the appeal for the reason that the several causes are improperly joined in this court. This motion was considered and overruled by the court. In his brief the defendant in error urges that the order made denying the motion to dismiss should be vacated and the cause should be dismissed. There are former decisions by this court in which the appeals have been dismissed under very similar circumstances and there are likewise cases in which the court has refused to dismiss the appeal. While we do not desire to encourage the practice of consolidating cases on appeal in this court, it appears to us that, owing to the fact that counsel for the respective parties by stipulation consented that the actions might be consolidated on appeal in this court, we should not dismiss same under the circumstances unless this court was without jurisdiction to pass upon the issues, and we are of the opinion that such is not

the case. Scrivner v. McClelland, 67 Okla. 51, 168 P. 415.

In the Berryman Case the amount of the taxes paid under protest and for which the plaintiff recovered judgment was $2.23. In the Jacquart Case the amount of protested taxes sued for and for which judgment was rendered was $23.44. In the Faherty Case the amount involved was $1.14, and in the Haley Case $143.80, making a total of $170.61, which would not cover the expense of printing the brief in this case. All of the questions presented could have been raised by either party, so the record clearly indicates that the plaintiffs are endeavoring to secure a precedent from this court to be used in other tax cases rather than to secure relief from a burdensome tax. While the amount involved in these actions is very small, if the propositions 'urged by the plaintiffs in error should be sustained, the result would involve all tax levies for county, city, town, township, and school district purposes, and there would not be a dollar of valid taxes levied in the county or any of the cities, towns, townships, or school districts of Oklahoma county for the year in question. While, of course, the taxpayers bringing the respective actions now before us for consideration could only recover the specific items of the several levies protested, yet if we should hold that the levies in this case were invalid for the reason some officer failed to perform a ministerial duty, and in the future some officer neglected or willfully failed to discharge that duty and one taxpayer protested the tax levy upon that ground under the law now in force (Initiative Law 100), disbursement of the entire tax paid to the county treasurer would be held in abeyance pending the final determination of that action, and if it was finally determined that the levy was invalid, then the entire levies in counties, cities, towns, townships, and school districts where the excise board failed to certify the levies to the county assessor would be invalid. Of course, regardless of the results, if the failure of a county officer to perform a purely ministerial duty invalidates the entire tax levy, we must follow the law and so hold; on the other hand, if the statute requiring the levy to be certified by the excise board to the county assessor is only directory, it is our duty to so declare.

Some discussion is made in the briefs relative to the case of Bonaparte, Co. Treas., v. Nelson, 142 Okla. 54, 285 P. 100, wherein this court held that:

"Until the contrary is made to appear, the law presumes that officers have discharged the duties which the law imposes upon them."

Counsel for plaintiffs in error contend that the rule of law announced in the Bonaparte v. Nelson Case is in conflict with the holding of this court in Stumpf v. Montgomery, 101 Okla. 257, 226 P. 65, wherein the court says:

"A presumption, in the true sense, that is, a legal presumption, is in its characteristic feature a rule of law laid down by the judge and attaching to evidentiary facts certain procedural consequences as to the duty of production of other evidence by the opponent. If the opponent does offer evidence to the contrary, the presumption disappears, and the case stands upon the facts and the reasonable inferences to be drawn therefrom."

In that case this court quoted from the decision in Mockowik v. Kansas City, St. J. & C. B. Ry. Co., 196 Mo. 550, wherein that court said:

"'Presumptions', as happily stated by a scholarly counselor, ore tenus in another case, 'may be looked on as the bats of the law flitting in the twilight, but disappearing in the sunshine of actual facts'."

However, if the learned counsel for the plaintiffs in error had delved deeper into the authorities, he would have discovered that the rule relative to general legal presumptions had nothing whatever to do with the presumption that all public officers perform their duty, the rule in the latter class of cases being entirely different, and this court has repeatedly so held. In Garrett v. State ex rel. Attorney General, 113 Okla. 63, 238 P. 846, it was held that:

"In the discharge of the duties of public officers, in the absence of evidence to the contrary, the law presumes that such officers have properly performed their duties and that they have complied with all the forms of law necessary to qualify them to act as they have done, and where some preceding act or pre-existing fact is necessary to the validity of such official acts, the presumption in favor of the validity of the official act is indulged until the contrary is shown."

In the case of Hamilton Township of Muskogee County v. Underwood, 81 Okla. 256, 198 P. 300, this court announced the rule as follows:

"It is a presumption of law that all public officers perform their duty, and in the absence of clear proof to the contrary, this court will refuse to hold that they did not do so in issuing warrants for claims against municipalities."

See, also, Oklahoma City v. Coombs, 125 Okla. 194, 257 P. 295; Board of Commissioners of Garfield County v. Fields, 63 Okla. 80, 162 P. 733, and the cases cited in these opinions sustaining the rule relative to the

presumption in favor of public officers. A mere presumption of law applies only in the absence of evidence as to the fact, and flies out of the case upon the production of any evidence, but the presumption that public officials perform their duties casts the burden of proof upon the issue. We call attention to these matters in order that the learned counsel may not in the future become confused relative to general legal presumptions and the presumptions of law relative to public officials.

Counsel for plaintiffs in error also state that the opinion in the case of Bonaparte v. Nelson, supra, was a five-four opinion, and that four of the justices of this court were in favor of sustaining the contention of the defendants in error in that case. The record, however, does not sustain that contention. The issue upon which this court divided in the opinion in the Bonaparte v. Nelson Case was relative to the publication of the financial statement and estimate of needs of the officers of Oklahoma county. Three members of the court were of the opinion that the case should be reversed and remanded with directions to take further testimony upon that issue, and concurred in the conclusion reached in the dissenting opinion. However, a majority of the court felt that there was not sufficient evidence to overcome the legal presumption in favor of public officials performing their duties, and that therefore we would presume they performed their duties and published the financial statement and estimated needs as required by law, and for the further reason that if a new trial was ordered the majority of this court was of the opinion that the trial court would not permit counsel for defendant in error to offer proof contradicting the solemn declarations in their original petition in that case wherein they alleged:

"That the financial statement and estimated needs of said taxing jurisdiction as prepared by the officers of said county, and certified to and approved by the excise board as required by law, disclosed a total appropriated needs for the general fund of," etc.

While the plaintiff, defendant in error in that case, filed a supplemental petition alleging that the statement and estimate of needs was not published as provided by law, the solemn declarations of his original petition still confronted him, and if, as he alleged, the statement and estimated needs was prepared by the officers of said county and certified to and approved by the excise board as required by law, it was necessary under the law that such statement be published before being certified to the excise

board, and that it could not be certified as required by law until it was so published, hence the defendant in error in that case by his original petition eliminated that issue from the case. In the case at bar there is no contention that the city of Oklahoma City did not publish its financial statement and estimate of needs.

We will now proceed to discuss the main issue involved in this case. This court held in Re Rolater, 67 Okla. 215, 170 P. 507, that:

"The provision in section 7326, Rev. Laws 1910, requiring the assessor to verify the assessment roll, is directory, and the failure of the assessor to attach this oath is an irregularity that will not render the assessment void."

Again, in Rogers, County Treasurer, v. Bass & Harbour Co., 64 Okla. 321, 168 P. 212, this court said:

"The members of the excise board are officials of the county, chosen by the electors thereof, and taxes levied by them for county purposes are levied in theory and in fact by the proper officials of said county."

And further that:

"Section 7380, Rev. Laws 1910, which requires the excise board to keep a record of its proceedings, is directory, and when a tax is in fact levied as required by law, the failure to keep a record thereof will not invalidate such tax, and the fact that a levy was made may be shown by other evidence."

In the case of Protest of Missouri, Kansas & Texas R. Co., 149 Okla. 166, 300 P. 713, this court held that:

"Where the levy is made in substantial compliance with law it should be sustained."

We see no more reason for holding that it is mandatory for the county excise board to certify the levies to the county assessor than it is for the county assessor to verify the tax rolls. If the plaintiffs in error could allege and show that the levies as entered by the county assessor upon the tax roll were different from the levies actually made by the county excise board, then they would be in a position to complain, but there is no question in this case but what the excise board of Oklahoma county met at the time and place the law requires them to meet and they took up the several items of the financial statement and estimate of needs of Oklahoma City and passed on each item separately and as a body and agreed upon the several items and made each levy and ordered the same certified to the county assessor. This being true, we are of the opinion that the law requiring levies when made by the excise board to be certified to the

officer whose duty it is to make up the tax rolls is directory, and when a levy is duly made by the excise board which is within the constitutional and statutory limitations and within the estimate of needs and financial statement of the county, city, town, township, or school district for which the levy is made, the same will not be held invalid because the officer whose duty it is to certify said levy to the county assessor fails to perform such ministerial duty, the levy having been properly made by the excise board and entered by the county assessor upon the tax rolls as made. The same constitutes a substantial compliance with the law and is valid. We therefore hold that the general proposition presented by the plaintiffs in error should be denied.

The second proposition is that a levy of .24 mills by the city for the benefit of its sinking fund is illegal and in excess of the estimated needs. It was stipulated that this levy was confined to four different bond issues all of which were dated March 1, 1922, being serial bonds maturing March 1, 1947. It was contended by one of the plaintiffs in error that the total bond issue should have been divided by 25 and thereby making an annual levy of 1-25 for each year after the date of the issuance thereof in order to retire the principal of said issues. It was the contention of the city that in order to meet the requirements at the maturity of these bonds, which matured March 1, 1947, it was necessary to divide the total principal by 24 in order that the funds might be in the city treasury at maturity and the city thereby have sufficient funds with which to pay off said bonds when the same matured. We think the contention of the city is correct and is in harmony with the former holdings of this court. McMahan v. Board of Education of Oklahoma City, 142 Okla. 110, 285 P. 953; Protest of Trimble, 151 Okla. 74, 300 P. 406. The first fiscal year in which a levy for the sinking fund could be made was the fiscal year commencing July 1, 1922, and ending June 30, 1923, and the last levy would have to be made in the fiscal year commencing July 1, 1945, and ending June 30, 1946, for the reason that the levy made for the fiscal year 1946-7 would not be payable in time to pay off the bonds March 1, 1947, as only the first half of the levy for that fiscal year would be payable before March 1, 1947.

The next contention of one of the plaintiffs in error is that a levy of .85 mills for the general fund of the city was illegal and in excess of the estimated needs. The financial statement showed the cash for the year 1923-24, and the cash for the year 1925-26, and the cash for the year 1926-27, together with the taxes in process of collection for the years 1926-1927. The only taxes in process of collection were the taxes for the previous fiscal year, 1926-1927. Among its liabilities were the outstanding warrants for the years 1923-24, 1925-26, and 1926-1927.

The question seems to have been settled against the contention of the plaintiff in error in the following decisions of this court; Acme Milling Co. v. Bonaparte, 125 Okla. 15, 257 P. 284; Albrecht v. Jones, 130 Okla. 277, 267 P. 270; and the Protest of Trimble, 151 Okla. 74, 300 P. 406. In the Trimble Case this court, in the 7th and 8th paragraphs of the syllabus, held:

"7. Uncollected taxes for a preceding fiscal year constitute no part of a balance on hand required to be shown on the financial statement of a municipality at the close of the fiscal year.

"8. Uncollected taxes for the fiscal year next immediately preceding a fiscal year may be included in the estimate of the probable income from ad valorem taxation under the restrictions imposed by statute. In re Monsell, 142 Okla. 130, 285 P. 836."

The next proposition urged by one of the plaintiffs in error is that a levy of .45 mills for library purposes and .50 mills for park purposes was illegal because it was in excess of the maximum 6 mills for general revenue purposes. To sustain this contention counsel for said plaintiff in error calls our attention to certain decisions of this court construing the law prior to the amendment by the Legislature in 1927, which amendment was in force at the time the estimate was approved and the levy made by the county excise board in this case. We held in Protest of Trimble, supra, that:

"Under the provisions of chapters 7, 8, and 69, Session Laws of 1927, neither the library fund, park fund, nor cemetery fund is a part of the current expense fund."

So, the excise board did not err in making the levies for library and park purposes in excess of the 6 mills for current expenses.

The last proposition urged is that a levy of 2.67 mills for sinking fund purposes of the city was illegal and in excess of the estimated needs. This proposition involves the levy for sinking fund purposes and it is contended by the plaintiffs in error that the city officials of Oklahoma City should have taken into consideration in making this levy the revenue derived from the waterworks system owned and operated by Oklahoma City. This proposition seems to be settled adversely to the contention of the plaintiff in error urging the same in

the following decisions of this court: St. Louis & S. F. Ry. Co. v. Andrews, Co. Treas., 137 Okla. 222, 278 P. 617; Pitts, Co. Treas., v. Allen, 138 Okla. 295, 281 P. 126; and Perrine v. Bonaparte, 140 Okla. 165, 282 P. 332. And the rule announced in the said cases in no way conflicts with the rule announced in Grubb v. Smiley, Co. Treas., 142 Okla. 19, 285 P. 38, and Aaronson v. Smiley, Co. Treas., 142 Okla. 29, 285 P. 59.

We held that revenue derived from the waterworks system owned by a city must be accounted for, but that the same might be used in extending the system or improving the system, and then if there is any surplus remaining, that same must be reflected in the financial statement and credited to one of the funds of the city, but that the city officials had a discretion to place the same to the credit of the general fund or the sinking fund as it might elect. In the Grubb Case this court ruled that the trial court should have overruled the demurrer for the reason that the plaintiff alleged that the city of Tulsa had a surplus of revenue derived from its waterworks system which it failed to account for, and that therefore the petition stated a cause of action against a demurrer. In St. Louis & S. F. Ry. Co. v. Andrews, surpra, this court held that:

"A tax levy made for the purpose of paying the interest on and creating a sinking fund for outstanding bonds issued for a municipally owned utility, is valid, there being no contention that the rate levied for such purpose is more than will be necessary."

We are, therefore, of the opinion that the trial court was justified in finding that each of the levies questioned by the plaintiffs in error was valid and within the Constitution and statute limitations, and that the court was justified in holding that the judgments entered December 3, 1928, were erroneous and on December 31, 1928, properly vacated its former judgments in the four causes involved in this action and in entering judgments therein for the defendant in error.

The judgments of the trial court are therefore in all things affirmed.

RILEY, HEFNER, CULLISON, and KORNEGAY, JJ., concur. McNEILL, J., concurs in conclusion. LESTER, C. J., and CLARK, V. C. J., absent. ANDREWS, J., dissents.