## SINCLAIR PRAIRIE PIPE LINE CO. et al. v. EXCISE BOARD OF SEMINOLE COUNTY.

No. 25436.    Feb. 19, 1935.

Rehearing Denied April 5, 1935.

Hunt & Eagleton, for plaintiffs in error.

Tom Huser, Co. Atty., of Seminole County, and Randall Pittman, City Atty., of Shawnee, for defendant in error.

WELCH, J. Two propositions were originally presented, the first of which is now admitted by the protestants to be not well taken, in view of opinions of this court rendered subsequent to the perfecting of the appeal.

The remaining question involves an alleged excessive general fund levy for the benefit of school district No. 31 of Seminole county. The exact point at issue is whether or not chapter 85, S. L. 1933, requires the tax levying officials to calculate net, unincumbered, and uncollected taxes for all prior years, using the same as a basis for financing the appropriations for the current fiscal year.

The excise board contends that it is only required to use such net taxes in process of collection for the year immediately preceding the year in which the appropriations are made, as decided in the case of In re Monsell, 142 Okla. 130, 285 P. 836, and other opinions of this court.

Prior to the passage of chapter 85, S. L. 1933, the law was well established that for the purposes herein discussed the net taxes in process of collection, which are unincumbered, might be used as an item of financing such appropriation. Such uncollected tax was no portion of a current surplus or surplus balance for purposes of appropriation and the determination of the amount of tax levy, but such uncollected tax was properly usable under the classification of estimated income from sources other than ad valorem taxation. Such use was restricted as to such uncollected taxes to the year immediately preceding the appropriation period involved, and there were further restrictions not specifically involved here, as is more clearly pointed out in Protest of St. Louis-S. F. Ry. Co., 166 Okla. 147, 26 P. (2d) 744. See Albrecht et al. v. Jones, Co. Treas., 130 Okla. 277, 267 P. 270; In re Monsell, supra; Protest of Trimble, 151 Okla. 74, 300 P. 406; Berryman v. Bonaparte, 155 Okla. 165, 11 P. (2d) 164,

and Turner v. Pitts, Co. Treas., 162 Okla. 246, 19 P. (2d) 563.

Protestants contend that chapter 85, S. L. 1933, changes the law and requires the taxing officials to employ and use net, uncollected, and unincumbered taxes in process of collection as an item of financing the current year appropriation; and that such uncollected taxes remaining on the tax rolls for all prior years should be so used and considered. The portion of the 1933 Act upon which protestants rely to sustain this contention is found in the first paragraph thereof, and is quoted as follows:

"The excise board shall thereupon make the levies therefor after deducting from the total so computed the amount of any surplus balance for the preceding year or years, which is represented by ad valorem taxes in the process of collection, together with the amount of the probable income of each from all sources other than ad valorem taxation; provided, that in no event shall the amount of such estimated income exceed the actual collections from such source for the previous fiscal year."

We have made a careful study of the 1933 Act, and have been greatly assisted by able briefs of the respective parties. The entire act is devoted almost entirely to amending the existing law with reference to the calculation of a reserve for delinquencies. Protest of St. Louis-S. F. Ry. Co., opinion handed down November 13, 1934, 169 Okla. 648, 38 P. (2d) 513. We do not think it was designed for the purpose of requiring the taxing officials to use as a basis of appropriation funds in excess of reasonable expectations of income and revenue for the current year for which the appropriations are made. If the act was for its purpose the establishment by law of an item to be used as a basis or item of finance for appropriation purposes, either as a portion of the surplus balance or as an item of income from sources other than ad valorem taxation, which cannot reasonaly be said to be liquid or reasonably capable of prompt collection, then the act in that respect would be in violation of the provisions of section 26, article 10, of the Constitution.

An examination of the section of the Constitution just referred to leaves no doubt that it has for one of its purposes the establishment of the "pay-as-you-go plan" or financial policy with reference to municipal subdivisions of the state. Aaronson v. Smiley, Co. Treas., 142 Okla, 29, 285 P. 59; O'Neil Engineering Co. v. Incorporated Town of Ryan et al., 32 Okla. 738, 124 P. 19, and other cases decided by this court.

We quote the following provisions of section 26, article 10, of the Constitution:

"No county, city, town, township, school district, or other political corporation, or subdivision of the state, shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year. * * *"

This financial policy of the state has been recognized as a constitutional safeguard against incurring obligations for any year without making reasonable provisions for the payment thereof. This well-established financial policy permits the making of appropriations for general fund purposes, and authorizes the issuance of warrants prior to the actual collection of funds in some instances, but it has never contemplated current general fund appropriations in excess of "the income and revenue provided for such year." Let us examine the facts presented in the instant case to determine if the appropriations as made were financed in such a manner as to reasonably meet the requirements of this constitutional provision, and as contended by protestants; whether or not there are other items of assets or finance which might reasonably be anticipated as an item of prompt return or collection. The actual unincumbered cash on hand is necessarily properly considered as a basis for appropriation, or as a surplus balance, and is called surplus balance. A levy of taxes for the current year in which the appropriations are made has been recognized without question as being a proper basis or item of finance for appropriation, as well as it might be, for it is entirely reasonable to anticipate the prompt collection of a portion thereof reasonably sufficient to retire the warrants issued in pursuance of the appropriation. Certain items of income from sources other than ad valorem taxation have been recognized as a proper basis or item of finance for appropriation; this upon the theory, however, that such anticipated income from such sources may be reasonably expected to yield a reasonably prompt return by collection thereof. Such anticipated income from other sources has been carefully limited in use to not exceed the amount actually collected from the same source during the previous fiscal year. The use of such anticipated collections has been uniformly approved, but the approval of such use has at all times rested upon the fact that its

prompt collection could be reasonably expected. Any attempted use of any item of whatsoever nature as a basis or item of finance for appropriation, which item does not fulfill the requirements of the financial policy provided in the Constitution, must fall.

Protestants here argue that chapter 85, S. L. 1933, provides that all unincumbered, net taxes in process of collection for all prior years must be used as a basis of the current year's appropriation. Let us test this theory with the constitutional provision we have just discussed. One of the first questions to answer would be, Is it reasonable to expect the prompt collection of all of these net, uncollected taxes, thus affording ready means of finance of the current year appropriation, and the payment of the warrants to be issued thereon? We answer the question in the negative. It is a matter of common knowledge that much of the taxes levied are never collected. Under protestants' theory, whenever a tax is levied and spread upon the rolls, it must always be carried as a live asset as long as it remains uncollected, and be used as a basis of additional appropriation without end. It is a matter of common knowledge that in many municipal subdivisions the aggregate of uncollected taxes since statehood would be a huge sum. In many such instances a calculation based upon protestants' contention would result in an enormous sum, which might be termed net and unincumbered taxes in process of collection. This would especially be true where the 10 per cent. reserve fixed by law had been grossly inadequate to offset delinquencies, and where general fund warrants have been retired by refunding or judgment. It is a matter of common knowledge that such condition exists in many municipal subdivisions of this state, and it is not unreasonable to anticipate the probability of other municipal subdivisions encountering the same difficulty in the future. In such case, if the taxing officials were required, as contended by protestants, to use all of the accumulated net and unincumbered taxes in process of collection as a basis or item of finance in making the current year appropriations, it would unquestionably result in enormously increasing the appropriations where the limit of levy is employed. It would result in enormously increasing the issuance of warrants in pursuance of the appropriations, and in decreasing the value of the finances supporting the warrants. It would

most certainly result in creating an indebtedness in excess of the income and revenue provided for the year, in violation of section 26, article 10, of the Constitution. This is so for the reason that a great portion of such taxes will probably always remain uncollected. Uncollected taxes, which have remained upon the tax rolls for a period of longer than the year immediately preceding the appropriation period involved, may not reasonably be considered as an item of asset, income, or revenue for appropriation purposes under the provisions of section 26, article 10, by reason of the fact that their prompt collection cannot be reasonably expected. Such net uncollected taxes for the year immediately preceding the appropriation period has been recognized as a proper item of financing the current appropriations by many decisions of this court. See Albrecht v. Jones and In re Monsell, supra, and cases cited. Such recognition of its use, however, has been grounded in the first instance upon the fact that the properly restricted amount of such taxes may reasonably be expected to be collected within a reasonable period of time. When anticipation of collection is carried entirely beyond the point of that which might reasonably be expected or anticipated as a matter of sound financing and good business judgment, it does violence to the fixed intent of the financial policy of the state as determined by the Constitution.

We, therefore, hold that chapter 85, S. L. 1933, does not require the use of net, uncollected, and unincumbered taxes in process of collection for all prior years to be used as a basis of current year appropriations.

We are aware that a literal interpretation of chapter 85, S. L. 1933, with particular reference to the portion thereof which we have hereinabove quoted, might indicate that the Legislature thereby intended to treat net, unincumbered, and uncollected taxes as a portion of the current surplus at the end of the year, instead of treating it as anticipated revenue to the next year from sources other than ad valorem taxation to that year. This treatment of the legislative intent would appear to change the rule of law as announced in Albrecht v. Jones and In re Monsell, supra, and other decisions of this court. Such a change in the law would mean that such uncollected taxes must be used whether or not there was any reasonable probability of prompt collection of same. Such a construc-

tion would render that portion of the act unconstitutional, for the reasons we have already pointed out.

Our consideration of the entire chapter 85, having in mind the financial policy of the state as fixed by the Constitution, leads us to the conclusion that the Legislature, in passing the act, had no intention of departing from the "pay-as-you-go" plan. So far as now appears to this court, the princ'pal change of the existing law which the act sought to make, was a change affecting the provisions of the law regarding the computation of the reserve for delinquencies. The first paragraph of the act is in most respects similar to section 12678, O. S. 1931, except for the changes made regarding this reserve, if the act is read with due regard to the Constitution. The first change in existing law accomplished by the act is to require the excise board to so compute the reserve for delinquencies that the amount of such reserve will not be affected one way or another by the actual cash surplus balance on hand. This is done for the purpose of partially eliminating the difficulty heretofore existing in this regard, which difficulty is reflected in A., T. & S. F. Ry. Co. v. Myers, Co. Treas., 114 Okla. 240, 246 P. 395, and other decisions of this court.

Prior to such change in the law 10 per cent. was added to all appropriations regardless of the amount of cash surplus on hand to be used as a part of the financing of such appropriations (unless no tax levy was required). Adjustment Realty Co. et al. v. Excise Board of Muskogee County, 141 Okla. 130, 284 P. 27; Protest of Oklahoma Pipe Line Co., 147 Okla. 163, 296 P. 406, and In re Monsell, supra. Chapter 85, supra, makes provision for deducting the cash surplus from the appropriations, and then adding a reasonable per cent. for the reserve. This results in requiring no reserve for delinquency as to the cash surplus. This change was accomplished largely by interlineations of section 12678, supra, and such interlineations appear to have been the cause of confusion. Section 12678, prior to the 1933 amendment, chapter 85, contained the phrase, "They shall thereupon make the levies therefor, after deducting from the total so computed the amount of any surplus balance of revenue or levy, ascertained to be on hand from the previous fiscal year or years." Prior to the decision in Albrecht v. Jones and In re Monsell, supra, it appears that the net, unincumbered, and uncollected taxes had been some times considered as a part of the surplus balance. Indeed, this condition of confusion has continued to exist to a certain extent in subsequent opinions of this court; only, however, in so far as expressions or verbiage is concerned. Some confusion must have existed in the minds of the members of the Legislature on this point, but it is evident that the chief design and intent of chapter 85, supra, was to prevent the actual cash on hand from entering into the calculation of the reserve, and to require proper net, unincumbered, uncollected taxes to be included in the calculation of the reserve. We have concluded that the changes made by chapter 85, S. L. 1933, which we have discussed here, and the interlineations therein, were made and employed chiefly for the purpose of a division of the surplus cash on hand, and of the net, unincumbered, uncollected taxes for purposes of calculating the reserve for delinquencies, so that the cash on hand would not be included within the calculation of the reserve, and that such portion of said chapter 85, supra, was not designed for the purpose of declaring net, unincumbered, uncollected taxes to be a portion of the surplus balance, or to make it mandatory that such net, unincumbered, and uncollected taxes for all prior years be used as a basis of appropriation for the current year.

Prior to the passage of chapter 85, S. L. 1933, it was the established law of this state that there was no surplus balance usable for the purpose of calculating or financing current year appropriations under the provisions of section 12678, O. S. 1931, save and except unincumbered cash actually on hand, and that uncollected taxes were no portion of the surplus balance for appropriation purposes. Albrecht v. Jones and In re Monsell, supra, and other cases. We hold that the 1933 Act does not change the law in that respect. Prior to the 1933 Act it was the established law that net, unincumbered, and uncollected taxes might be considered as a basis of financing appropriations in the same manner as any other anticipated revenue and income from sources other than ad valorem taxation. This classification of uncollected taxes left it discretionary with the taxing officials as to what portion of same within certain limits should be used as a basis or item of finance for appropriation, the same as estimated income from other sources. We hold that the 1933 Act changed the law in that regard, in that it made it mandatory that the taxing officials use such net, incum-

bered, and uncollected taxes for the year immediately preceding the appropriation period involved as a basis or item of finance for appropriation, restricted, however, as shown in Protest of St. Louis-S. F. Ry. Co., 166 Okla. 147, 26 P. (2d) 744. A requirement of such use of such uncollected taxes appears to be in accord with the provisions of our Constitution as herein discussed.

The judgment of the Court of Tax Review is affirmed.

McNEILL, C. J., and BAYLESS, CORN, and GIBSON, JJ., concur.